# EXHIBIT A

**FARKAS & DONOHUE, LLC**
Evelyn C. Farkas, Esq. 024851985
25A Hanover Road; Suite 320
Florham Park, NJ 07932
(973) 443-9400
(973) 443-4330 Fax
Attorneys for Plaintiff, Dina Bono

| | | |
|---|---|---|
| DINA BONO, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION – ESSEX COUNTY |
| *Plaintiff(s)*, | : | DOCKET NO.: ESX-L- |
| | : | |
| v. | : | |
| | : | Civil Action |
| AMERICAN GENERAL LIFE INSURANCE | : | |
| COMPANY, ABC CORPORATIONS 1-10, | : | |
| (series of fictitious designations representing | : | **COMPLAINT AND DEMAND FOR** |
| classes of as yet unknown corporate or | : | **JURY TRIAL** |
| business entities affiliated or connected with | : | |
| the individual defendant in this matter), et al. | : | |
| | : | |
| *Defendants.* | : | |

Plaintiff, Dina Bono, residing at 17 Beachmont Terrace in the City of North Caldwell, and State of New Jersey, by way of complaint against the defendants, American General Life Insurance Company, and X,Y, and Z Corporations alleges and says:

## PARTIES

1.     That the Plaintiff is a resident of the City of North Caldwell, in the County of Essex and State of New Jersey, with a residential address of 17 Beachmont Terrace, North Caldwell, New Jersey.

2.     At all times relevant to this Complaint, upon information and belief, Defendant, American General Life Insurance Company (AIG) was a for-profit corporation with its principal place of business in Houston, Texas, with its principal home office at 2727 A Allen Parkway, Houston, Texas 77019.

3.     At all times relevant to this Complaint, the Defendant AIG was authorized to, and in fact do, engage in business in the State of New Jersey and in Essex Count, New Jersey.

4.     At all times relevant to this Complaint, the Defendant AIG was engaged in business in the State of New Jersey and in Essex County, New Jersey through its business contacts with the state, including but not limited to the issuance of life insurance policies.

5.     That Defendants X, Y and Z Corporations, representing fictitious pleading subsidiaries, agents, or affiliates of American General Life Insurance Company, or corporate entities authorized by American General Life Insurance Company to conduct business in the State of New Jersey, which were responsible for the issuance, underwriting, maintenance, and/or management of the subject life insurance policy, YME 013697.

## FIRST COUNT
### BREACH OF CONTRACT

6.     On January 6, 2005, the Defendants issued to the Plaintiff's decedent, Joseph J. Bono, a 15 year term life insurance policy with policy number YME013697 for benefits totaling $750,000.00 with an initial expiration date of January 6, 2020.

7.     Within the application for life insurance, Joseph J. Bono designated his wife, the plaintiff, Dina Bono, as beneficiary of the life insurance policy.  As such Dina Bono holds a vested property right in the subject life insurance policy and is a real party in interest as per R. 4:26-

8.     At all times, beginning on the date of issue, the plaintiff's decedent had a valid life insurance contract in effect with the defendant, American General Life Insurance Company.

9.     Annual premiums were due from the insured to the defendant in the amount of $1,657.50.  Premiums were payable at quarterly intervals in the amount of $439.24.

10.    All premiums forwarded by the insured were retained, processed and credited by the defendants to the subject life insurance policy.

11.    No notice of cancellation or termination was ever received by the insured. The Defendants did not transmit any notice of cancellation or termination to Joseph J. Bono.

12.    The Defendants had a legal and contractual duty to provide the policy holder, Joseph J. Bono with notice of cancellation or termination.

13.    On February 21, 2017 the insured, Joseph J. Bono passed away. Due proof of the insured's death was forwarded by the plaintiff to the defendant.

14.    On April 18, 2017 the defendants sent correspondence to the Plaintiff indicating that the life insurance policy issued to Joseph J. Bono was terminated on May 24, 2015 due to nonpayment of a premium due April 6, 2015. The defendants provided no other reasons for denial of the claim for payment of the life insurance policy benefits.

15.    On May 9, 2017 Plaintiff provided proof to the defendants that the premium payment in the amount of $439.24 was retained, processed, and credited to the policy on July 16, 2015 after the date the defendants alleges the policy was terminated.

16.    The Defendants' conduct in accepting and retaining payment after the alleged cancellation due to nonpayment demonstrated that the policy remained in effect. By crediting payment to the subject policy, the defendant waived its right to cancellation of coverage and is estopped from disclaiming coverage. Furthermore, by its retention of the premium, the defendant induced reasonable reliance on the part of the insured, Joseph J. Bono.

17.    At no time after retaining processing and crediting to the policy the premium due did the defendants take any action to terminate or cancel the contract for insurance, nor to provide notice to the plaintiff or the insured of intent to cancel or terminate the contract.

18.     Having satisfactorily demonstrated proof of the insured's death and disputed the Defendants' claim that the policy was terminated in May 2015, the plaintiff again demanded on May 9, 2017 that the Defendants process the request for payment of the policy's proceeds.

19.     Despite repeated demand that the Defendants process the request for payment under the policy and settle the claim, the Defendants have failed and refused to do so.

20.     At all times material hereto, plaintiff has fully cooperated with American General Insurance Company and provided access to requested documentation necessary to process the demand for payment of benefits.

**WHEREFORE**, plaintiff demands judgment against the Defendants, declaring that the defendants, breached their contract of insurance and awarding damages against the defendants with lawful interest, cost of suit and reasonable attorney's fees.

## SECOND COUNT
### ESTOPPEL

21.     Plaintiff repeats and realleges each of the allegations of Paragraphs 1-19 of this Complaint as if set forth fully herein at length and incorporates same by reference hereto.

22.     In or about January, 2012 the insured, Joseph J. Bono was diagnosed with cancer.  For the next five (5) years, until his death on February 21, 2017 Joseph J Bono became increasingly more ill. Given the extensive nature of the treatment Mr. Bono required for his illness, and the impact his illness had upon his day to day life, there were instances when premium payments were transmitted late to the defendant.  On all such occasions, save for the last payment which forms the basis for this cause of action, the defendants accepted Mr. Bono's late payment.

23.     From 2012 until 2015 at least thirteen premium payments were made by Joseph J. Bono and credited to policy YME0136979.  Of the thirteen premium payments, only one was timely paid (January 3, 2012) prior to the premium due date (January 6, 2012).

24.     A thirty-one (31) day grace period attached to each quarter's premium due date. Contractually, the defendants were required to accept any, and all late payments made within the thirty-one (31) day grace period.  Six (6) of the thirteen (13) payments made between 2012 and 2015 were paid during the thirty-one (31) day grace periods.

25.     The defendants established a custom and course of conduct whereby notice would be given to the insured, Joseph J. Bono of any lapse or nonpayment of premiums.  Such notice took the form of "Late Payment Offers".

26.     It was the defendants' practice/custom and course of conduct to send Late Payment Offers anytime payment was not received by the thirty-one (31) day grace period deadline.

27.     The defendants' Late Payment Offers provided the insured with notice: 1) that payment was not received before the end of the grace period, 2) that insurance protection had lapsed, 3) that the policy may be automatically reinstated with waiver of evidence of insurability, and 4) of the date by which payment had to be made to reinstate.

28.     The defendants' actions by sending Late Payment Offers established a course of conduct which induced reasonable reliance on the part of the insured that notice would be provided of any nonpayment of premium, and period of lapse in coverage.

29.     The defendants' actions by sending Late Payment Offers also established a course of conduct which induced reasonable reliance on the part of the insured that a lapse would be subject to automatic reinstatement with timely payment within the period fixed by the Late Payment Offer notice.

30.    On four (4) occasions between 2012 and 2015 Late Payment Offers were transmitted to Mr. Bono due to lapse occurring for nonpayment of premium within the grace period.  The Late Payment Offers were sent by the defendants on May 7, 2012; May 7, 2013; May 7, 2014; and February 8, 2015.  On each and every occasion that a Late Payment Offer was transmitted, Mr. Bono made payment within the period fixed for automatic renewal of the policy.

31.    The defendants did not provide notice of any lapse occurring in Mr. Bono's life insurance policy after February 2015.

32.    The defendants did not provide any notice of lapse occurring in the life insurance policy for the premium that became due April 6, 2015.

33.    Payment was nevertheless rendered by Joseph J. Bono by check transmitted July 7, 2015 for the premium due April 6, 2015.  The defendants accepted the July 7, 2015 payment and credited the payment to Mr. Bono's account on July 16, 2015.

34.    About two months after the Defendants had applied Mr. Bono's payment to his life insurance policy, without explanation or correspondence to explain, the defendants returned Mr. Bono's July 7, 2015 check in September 2015.

35.    On information and belief, the Defendants' conduct in arose from their having learned of Mr. Bono's cancer diagnosis and/or terminal condition.

36.    The defendants, having failed, in accordance with its established custom and practice of sending Late Payment Offers, to provide notice to Mr. Bono of nonpayment within the grace period ending in May 2015, resulted in harm to Mr. Bono, depriving the insured of notice of nonpayment, depriving the insured of an opportunity to address the lapse in policy, resulting in the unexplained and unexpected termination of his policy, and depriving the insured of the opportunity to automatically renew the policy.

37.     As a result of the defendants' failure to adhere to its established custom and practice, policy YME0136979 lapsed, requiring that Joseph J. Bono provide evidence of insurability to reinstate the policy he held for ten (10) years.  Given his medical condition, Mr. Bono would not have qualified to reinstate the policy.

38.     As a result of the defendants' failure to adhere to its established custom and practice, the defendants are estopped from declaring the policy, YME0136979 forfeited for nonpayment/late payment.

**WHEREFORE**, plaintiff demands judgment against the defendants, declaring that the defendants breached their duties to the insured and awarding damages against the defendants with lawful interest, cost of suit and reasonable attorney's fees.

**THIRD COUNT**
**DECLARATORY JUDGMENT**

39.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 34 as if fully set forth at length herein.

40.     Plaintiff seeks a declaratory judgment for the purpose of determining a question of actual controversy between the parties concerning her rights, obligations, and coverages under the subject policy.

**WHEREFORE,** plaintiff seeks a declaration that the subject life insurance policy was valid, in effect at the time of the insured's passing, and provides full insurance coverage to the beneficiary, the plaintiff, Dina Bono.  The Court should require the defendants to specifically perform in accordance with the life insurance contract and release the full benefits due under the contract plus interest to the Plaintiff.

## FOURTH COUNT
## BAD FAITH

41.    Plaintiff realleges and reavers each and every allegation contained in paragraphs 1 through 36 as if delineated here in extensor.

42.    The Contract for life insurance issued by the Defendants imposed an implied obligation of good faith and fair dealing it its performance and enforcement.

43.    The defendants| breached their duty of good faith and fair dealing, as well as their affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the plaintiff when:

   a.    Failing to promptly pay the full amount of the claim due to the plaintiff after satisfactory proof of death of the insured;

   b.    Falsely declaring the subject life insurance policy terminated in May 2015 without conducting a reasonable investigation based upon all information available;

   c.    Failing to affirm or deny coverage of the claim within a reasonable time after the Plaintiff demonstrated the continued viability of the policy after May 2015;

   d.    Not attempting to negotiated in good faith to effectuate prompt, fair and equitable settlement of the plaintiff's claim;

   e.    The defendants' conduct in refusing to render payment of the benefits to the plaintiff compelled the plaintiff to institute litigation to recover amounts due under the insurance policy;

   f.    And any other acts or omissions of the defendants to be shown at trial on the merits.

44.    The defendants' failures and/or omissions constitute bad faith, and entitle the plaintiff to recover attorney's fees, costs, punitive damages and penalties as allowed by law.

**WHEREFORE**, plaintiff demands judgment against the defendants for damages, punitive damages, interest, cost of suit and reasonable attorney's fees.

**FIFTH COUNT**
**BREACH OF FIDUCIARY DUTY**

45.     Plaintiff realleges and reavers each and every allegation contained in paragraphs 1 through 40 as if delineated here in extensor.

46.     The defendants owed a fiduciary duty to the Plaintiff not to violate her rights as the beneficiary of the insured's life insurance policy.

47.     The defendants violated its fiduciary duties to the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages, punitive damages, interests, cost of suit, and reasonable attorney's fees.

**FIFTH COUNT**
**UNJUST ENRICHMENT**

48.     Plaintiff realleges and reavers each and every allegation contained in paragraphs 1 through 43 as if delineated in extensor.

49.     Despite realizing substantial premiums from the plaintiff and the plaintiff's decedent, the defendants withheld the insurance proceeds owed to the Plaintiff.

50.     The defendants have therefore been unjustly enriched at Plaintiff's expense.

WHEREFORE, Plaintiff demands judgment against the defendants for damages, punitive damages, interests, cost of suit, reasonable attorneys fees, and any and all other equitable relief deemed appropriate.

## DEMAND FOR JURY

Plaintiff, Dina Bono, hereby demands a Trial by Jury on all issues of fact.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of Rule 4:25-4, the Court is advised that EVELYN C. FARKAS, ESQ. is hereby designated as trial counsel on behalf of the Plaintiff.

## CERTIFICATION OF RELATED MATTERS

Pursuant to Rule 4:5-1, it is hereby certified that this matter in controversy is not the subject of any other action pending in any Court, is not the subject of a pending arbitration proceeding and none is contemplated. I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FARKAS & DONOHUE, LLC

Attorneys for Plaintiff

By: _____

Evelyn C. Farkas

Dated: 12/15/17